IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| DAVID CAZALAS,<br><br> Plaintiff,<br><br>v.<br><br>INTERNATIONAL PAPER COMPANY and INTERNATIONAL PAPER COMPANY SALARIED SAVINGS PLAN,<br><br> Defendants. | No. 2:24-cv-02130-SHM-tmp |

**ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; AND (2) DENYING AS MOOT DEFENDANTS' MOTION TO STRIKE JURY TRIAL DEMAND**

Plaintiff David Cazalas sues Defendants International Paper Company ("IP") and International Paper Company Salaried Savings Plan ("IP Savings Plan"), alleging violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.* (ECF No. 1). Before the Court are Defendants' Motion to Dismiss Plaintiff's Complaint under Rule 12(b)(6) and Motion to Strike Plaintiff's Jury Trial Demand under Rule 39(a)(2). (ECF No. 9). On July 15, 2024, Plaintiff voluntarily dismissed his jury trial demand with prejudice by stipulation. (ECF No. 16). For the reasons below, Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART.** Defendants' Motion to Strike Jury Trial Demand is **DENIED AS MOOT.**

## I.    BACKGROUND

### A. Factual Background

Plaintiff is a former salaried employee of IP and a participant in IP's Salaried Employee Severance Plan ("IP Severance Plan"). (ECF No. 1, ¶ 1). He began working for IP in 1989 and was discharged from his position as distribution manager on March 1, 2022. (ECF No. 1, ¶ 6). In late 2020 or early 2021, Plaintiff learned that IP would spin off its print paper business to a newly formed company, Sylvamo Corporation ("Sylvamo"). (ECF No. 1, ¶¶ 3, 9). As part of the spin-off, the entire distribution department, including Plaintiff's group, would transfer to Sylvamo. (ECF No. 21).

On May 21, 2021, Kevin Pierce, an executive at Sylvamo, informed Plaintiff that he "would be welcome at Sylvamo in a similar position" after the spin-off. (ECF No. 1, ¶ 11). The offer was informal and communicated orally. (ECF No. 1, ¶¶ 26, 29). Plaintiff responded that he was "not far from retirement and was not keen on beginning over at a new company." (ECF No. 1, ¶ 12, ECF No. 21).

Over the next two months, Plaintiff "exchanged several calls" with Linda Bramblett, an IP executive, to discuss Plaintiff's potential transfer to Sylvamo. (ECF No. 1, ¶¶ 20-

27). Although the parties continued negotiating, no agreement
was reached. (ECF No. 1, ¶¶ 24-26). On June 23, 2021, Plaintiff
noticed that Sylvamo had posted an opening for his position.
(ECF No. 10, Exhibit G). When Plaintiff asked Bramblett if he
needed to apply for the position, she responded that he did not.
(ECF No. 1, ¶ 24). Bramblett reassured Plaintiff that she was
"working on a plan with HR" but did not communicate further.
(ECF No. 10, Exhibit G). By July 2021, Plaintiff's position at
Sylvamo had been filled. (ECF No. 1, ¶ 30).

On August 26, 2021, Sylvamo provided a written memorandum
stating that the offer had lapsed because Plaintiff's inaction
constituted a rejection. (ECF No. 1, ¶¶ 27-28). The memorandum
also noted that, because Plaintiff had expressed a desire to
retire on March 1, 2022, he would remain employed at IP until
his retirement. (ECF No. 1, ¶ 27). Plaintiff alleges that he had
"never received a formal offer of employment from Sylvamo," and
he was "not notified that IP was eliminating his position" until
August 26, 2021. (ECF No. 10, Exhibit E). Plaintiff also alleges
that he was forcefully discharged because he never confirmed his
retirement with IP. (ECF No. 1, ¶ 32).

On November 12, 2021, Plaintiff applied for severance
benefits based on his alleged involuntary termination from IP.
(ECF No. 1, ¶¶ 44-45, ECF No. 21). IP's Business HR Manager,

3

Nancy Koska, denied Plaintiff's application on January 3, 2022, saying that Plaintiff was ineligible because he had voluntarily retired and declined Sylvamo's transfer offer. (ECF No. 10). Plaintiff appealed. (ECF No. 1, ¶ 47). On April 15, 2022, the IP Severance Plan Administrator upheld the denial. (ECF No. 1, ¶ 48). On June 13, 2022, Plaintiff requested documents supporting the denial, but IP did not respond. (ECF No. 1, ¶¶ 50-56).

**B. Procedural Background**

On February 28, 2024, Plaintiff filed this suit against IP and IP Savings Plan, claiming the following:

> **ERISA § 502(a)(1)(B) claim:** Plaintiff seeks recovery of severance benefits owed under 29 U.S.C. § 1132(a)(1)(B).

> **ERISA § 502(a)(3) claim:** Plaintiff claims that Defendants breached their fiduciary duty in violation of 29 U.S.C. § 1132(a)(3).

> **ERISA § 510 claim:** Plaintiff claims that Defendants purposefully interfered with his protected rights in violation of 29 U.S.C. § 1140.

Plaintiff seeks restitution of lost benefits, estimated between $250,000 and $300,000 (ECF No. 1, ¶ 58), with reasonable attorneys' fees and court costs. (ECF No. 1, ¶ 59).

On June 25, 2024, Defendants moved to dismiss Plaintiff's complaint and to strike his jury trial demand. (ECF No. 9). On July 15, 2024, Plaintiff voluntarily dismissed his jury trial

demand with prejudice by stipulation. (ECF No. 16). On July 31, 2024, Plaintiff filed a response opposing Defendants' motions. (ECF No. 21). On August 23, 2024, Defendants replied to Plaintiff's response. (ECF No. 23). The matter is now fully briefed and ripe for adjudication.

## II.  JURISDICTION AND VENUE

The Court has federal question jurisdiction under 28 U.S.C. § 1331, which grants district courts original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States, based on Plaintiff's allegation that Defendants violated ERISA. Venue is proper in this district under 28 U.S.C. § 1132(e).

## III. STANDARD OF REVIEW

In deciding a Rule 12(b)(6) motion, courts "construe the complaint in the light most favorable to the plaintiff [and] accept all factual allegations as true." Payne v. Secretary of Treasury, 73 Fed.Appx. 836, 837 (6th Cir. 2003); see also League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007). However, courts "need not accept as true legal conclusions or unwarranted factual inferences." Commercial Money Ctr., Inc. v. Illinois Union Ins. Co., 508 F.3d 327, 336 (6th Cir. 2007); see also JP Morgan Chase Bank, N.A. v. Winget, 510

5

F.3d 557, 582 (6th Cir. 2007). Courts may consider "matters of public record, orders, items appearing in the record, and exhibits attached the complaint," as well as "documents that a defendant attaches to a motion to dismiss […] if referred to in the complaint and are central [the] claim." Amini v. Oberlin College, 259 F.3d 493, 502 (6th Cir. 2001).

To survive a Rule 12(b)(6) motion, a complaint must contain sufficient facts to "state a claim that is plausible on its face." Albrecht v. Treon, 617 F.3d 890, 893 (6th Cir. 2010) (citing Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). A claim is plausible when the alleged facts "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Although the complaint is not required to include "detailed factual allegations," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), it must assert "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint may be dismissed "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); see also David H. Elliot

Co. v. Caribbean Utilities Co., 513 F.2d 1176, 1182 (6th Cir. 1975).

## IV.  ANALYSIS

Defendants move to dismiss Plaintiff's complaint on several grounds: (1) the complaint fails to provide Defendant with adequate notice of the claims by failing to specify each cause of action and connecting the causes of action with the relevant facts; (2) IP and IP Savings Plan are not proper defendants on Plaintiff's ERISA claims; (3) Plaintiff fails to state a plausible § 502(a)(1)(B) claim based on his ineligibility for severance benefits under the terms of his employment; (4) Plaintiff fails to state a plausible § 502(a)(3) claim because Defendants were not acting in a fiduciary capacity; and (5) Plaintiff fails to allege facts showing Defendants purposefully interfered with his rights under § 510. (ECF No. 10).

### A.  Whether Plaintiff's Complaint Meets the Notice Pleading Requirements of Rules 8(a)(2) and 10(b)

Defendants argue that Plaintiff's complaint is an impermissible "shotgun pleading" that violates the notice pleading requirements of Federal Rules of Civil Procedure 8(a)(2) and 10(b). (ECF No. 10). Rule 8(a)(2) requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2).

Rule 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). And "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence […] must be stated in a separate account or defense." Id.

Although the rules do not define "shotgun pleading," courts have identified several situations in which a complaint violates notice pleading requirements. See, e.g., Lee v. Ohio Education Association, 951 F.3d 386, 392-93 (6th Cir. 2020) (holding a complaint asserting seven state law claims in a single sentence is a "shotgun pleading" that violates Rules 8(a)(2) and 10(b)); Cincinnati Life Ins. Co. v. Beyrer, 722 F.3d 939, 947 (7th Cir. 2013) (holding a complaint that states five causes of action in a single count is an impermissible "kitchen sink" pleading). Although "shotgun pleadings" can take many forms, the unifying characteristic is that they make it "virtually impossible for a defendant to know which allegations of fact are intended to support which claims for relief." Arnold v. CooperSurgical, Inc., 681 F.Supp.3d 803, 824 (S.D. Ohio 2023).

Plaintiff's complaint is not a "shotgun pleading." Although it broadly alleges ERISA violations without specifying statutory provisions (ECF No. 1), it does not prevent Defendants from

8

understanding which facts connect which causes of action. (ECF
No. 21). Defendants may have had difficulty deciphering
Plaintiff's claims, but they were able to proceed with an answer,
which they filed on June 25, 2024 (ECF No. 9) and August 23,
2024. (ECF No. 23). See Loggins v. Costco Wholesale Corporation,
No. 2:22-cv-02026, 2022 WL 2161521 at *3-4 (W.D. Tenn. Jun. 15,
2022) (finding a complaint is not a "shotgun pleading" when
"there is nothing so vague or ambiguous about the complaint that
would preclude the defendant from reasonably moving forward with
an answer."). Plaintiff's response to Defendants' Rule 12(b)(6)
motion clarifies that his claims arise under § 502(a)(1)(B), §
502(a)(3), and § 510 of ERISA. (ECF No. 21). That is inconsistent
with Defendants' statement that the complaint "fails to place
Defendants on notice of what the legal claims at issue are."
(ECF No. 23).

Plaintiff's complaint provides Defendants with "adequate
notice of the claims […] and the grounds upon which each claim
rests." Lee, 951 F.3d at 392-93. It includes numbered paragraphs
as required by Rule 10(b). See Fed. R. Civ. Pro. 10(b). Rule
10(b)'s requirement that "claims be stated in a separate account
or defense" is not mandatory; it applies only "if doing so would
promote clarity." Fed. R. Civ. P. 10(b). Although the complaint

does not fully comply with Rule 10(b), its deficiencies do not warrant dismissal.

**B.   Whether IP and IP Savings Plan Are Proper Defendants in Plaintiff's ERISA Action**

Under ERISA, "[a]n employee benefit plan may sue or be sued […] as an entity." 29 U.S.C. § 1132(d)(1). However, there is a circuit split about whether only the ERISA plan itself is the proper defendant in an ERISA claim. See Jass v. Prudential Health Care Plan, Inc., 88 F.3d 1482, 1490 (7th Cir. 1996) ("ERISA permits suits to recover benefits only against the Plan as an entity…"); but see Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 233 (3d Cir. 1994) (allowing actions against both the ERISA plan and its fiduciary).

Although the Sixth Circuit has not directly addressed this issue, it has held that a proper defendant may be "an employer or plan administrator who controls the administration of the plan or is responsible for benefits decisions[.]" Gadberry v. Bethesda, Inc., 608 F.Supp.2d 916, 919 (S.D. Ohio 2009) (citing Daniel v. Eaton Corp., 839 F.2d 263, 266 (6th Cir. 1998)). ERISA actions are typically brought against the plan administrator, Hogan v. Jacobson, 823 F.3d 872, 884 (6th Cir. 2016), but they may also be brought against a fiduciary or employer. See, e.g., Little v. UNUMProvident Corp., 196 F.Supp.2d 659, 672 (S.D. Ohio

10

2002) (holding that a fiduciary who decided to terminate benefits was a proper defendant); Moore v. Lafayette Life Ins. Co., 458 F.3d 416, 438 (6th Cir. 2006) (holding that an ERISA action may be brought against an insurance company with authority to grant or deny benefits, but not against an employer with no control over benefits decisions).

### 1.  IP Is a Proper ERISA Defendant

Defendants argue that IP is not a proper defendant because it is not the plan administrator. See Riverview Health Institute LLC v. Medical Mutual of Ohio, 601 F.3d 505, 522 (6th Cir. 2010) ("the proper defendant in an ERISA action concerning benefits is the plan administrator[.]"). Relying on Riverview, Defendants contend that the Plaintiff may only sue IP Severance Plan, the administrator of IP's severance benefits. (ECF No. 10). Plaintiff did not serve process on IP Severance Plan.

Riverview does not hold that the plan administrator is the *only* proper defendant, but that the plan administrator is *a* proper defendant. As the Sixth Circuit held in Daniel, employers who "control administration of the plan" may also be sued. Daniel, 839 F.2d at 266; see also Gore v. El Paso Energy Corp. Long Term Disability Plan, 477 F.3d 833, 842 (6th Cir. 2007); Little, 196 F.Supp.21 at 672 (holding that ERISA claims can be brought against both fiduciaries and employers). The test for

11

"control" is whether the employer "has authority to grant or deny benefits." Moore, 458 F.3d at 438. Defendants' narrow reading of Riverview is inconsistent with Sixth Circuit precedent.

IP is a proper defendant. Accepting the allegations in Plaintiff's complaint, IP exercised control over severance benefits decisions. (ECF No. 1). Plaintiff applied for severance benefits by submitting a letter to Nancy Koska, IP's Business HR Manager. (ECF No. 1, ¶ 45). Koska's January 3, 2022 letter denying Plaintiff's application demonstrates that she had the authority to "control administration of the plan." (ECF No. 10, Exhibit E). See Daniel, 839 F.3d at 266. Koska, an IP employee, acted on behalf her employer when she denied Plaintiff's application. The denial letter, bearing the IP logo and heading, demonstrates that she acted in her official capacity. (ECF No. 10, Exhibit H). Plaintiff sufficiently alleges that IP controls the administration of his severance benefits.

### 2.   IP Savings Plan Is Not a Proper ERISA Defendant

Defendants also argue that IP Savings Plan is not a proper defendant because it administers 401(k) benefits, not severance benefits.

Plaintiff's claim arises from the denial of severance benefits, which IP Savings Plan does not administer. The complaint does not address 401(k) benefits under the IP Savings Plan (ECF No. 10), or suggest that IP Savings Plan had any control over severance benefits decisions. (ECF No. 10). Plaintiff's original complaint, severance benefit application, and subsequent correspondence are directed to the IP Severance Plan. (ECF Nos. 1, 10 Exhibit E). Plaintiff's claim should be against IP Severance Plan, not IP Savings Plan, which appears to have been mistakenly included as a co-defendant. (ECF No. 1).

Plaintiff concedes that he should have named IP Severance Plan as a co-defendant and argues that the proper remedy is to "afford [him] the opportunity to amend his complaint," rather than granting Defendant's Motion to Dismiss. (ECF No. 21). Under Federal Rule of Civil Procedure 15(a), Plaintiff has a right to amend his complaint *once* within 21 days of service of a 12(b)(6) motion. See In re AME Church Employee Retirement Fund Litigation, No. 1:22-md-03035-STA, 2024 WL 4668163, at *3 (W.D. Tenn. Nov. 4, 2024) (citing Fed. R. Civ. P. 15(a)(1)). After that period expires, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Glenn v. Frenchko, 642 F.Supp.3d 633, 636 (N.D. Ohio 2022); Fed. R. Civ. P. 15(a)(2). Here, more than six months have passed since Defendants

filed their Motion to Dismiss, and Plaintiff has neither filed a motion for leave to amend nor obtained Defendants' consent to amend the complaint. Plaintiff's ERISA claims against IP Savings Plan are **DISMISSED**.

### C. Whether Plaintiff States a Claim for Severance Benefits Recovery Against IP Under § 502(a)(1)(B)

A claim for recovery under ERISA § 502(a)(1)(B) may be brought only by a "participant or beneficiary" seeking "benefits due to him under the terms of his plan." See 29 U.S.C. § 1132(a)(1)(B). Defendants argue that Plaintiff is ineligible for benefits under the IP Severance Plan, which conditions eligibility on accepting a comparable job after involuntary termination. (ECF No. 10). Because Plaintiff allegedly rejected an offer at Sylvamo after the spin-off, Defendants contend he is ineligible for severance. (ECF No. 10). Defendants allege that Plaintiff voluntarily accepted the conditions under a transition services agreement, signed on August 31, 2021, to assist with the transfer of his department to Sylvamo until his scheduled retirement on March 1, 2022. (ECF No. 10).

Plaintiff provides a contradictory account. He alleges that he never received an offer from Sylvamo in the first place. (ECF No. 21). He also alleges that he was misled by IP's executives and was surprised to learn, in an August 26, 2021 conversation,

14

that his position was being eliminated. (ECF No. 10, Exhibit E).
Plaintiff alleges that he never confirmed his retirement with IP
and was "forced to retire on March 1, 2022." (ECF No. 1, ¶ 32,
ECF No. 21).

Whether Plaintiff is entitled to severance depends on
whether he declined the transfer offer, raising a factual dispute
that cannot be resolved at the motion-to-dismiss stage. See
Rembisz v. Lew, 590 Fed.Appx. 501 (6th Cir. 2014) (holding that
an issue of fact cannot be resolved on motion to dismiss).
Viewing the facts in the light most favorable to Plaintiff, the
Court accepts his version of the events as true. See Payne, 73
Fed.Appx. at 837. Without additional information or argument,
dismissing Plaintiff's claim would be premature. See Flex Homes,
Inc. v. Ritz-Craft Corp. of Michigan, Inc., 721 F.Supp.2d 663,
668 (N.D. Ohio 2010) ("The purpose of a motion under 12(b)(6) is
to test the sufficiency of the complaint—not to decide the merits
of the case."). Plaintiff's claim against IP may proceed to
discovery.

### D. Whether Plaintiff States a Claim for Fiduciary Duty Breach Against IP Under § 502(a)(3)

"ERISA imposes high standards of fiduciary duty upon
administrators of an ERISA plan." Krohn v. Huron Memorial
Hospital, 173 F.3d 542, 547 (6th Cir. 1999). That duty has three

components. Berlin v. Mich. Bell Tel. Co., 858 F.2d 1154, 1162 (6th Cir. 1988). The first is the "duty of loyalty," which requires that "all decisions regarding an ERISA plan be made with an eye single to the interests of the participants and beneficiaries[.]" Id. (quoting Donovan v. Bierwirth, 680 F.2d 263, 271 (2d Cir. 1982); accord 29 U.S.C. § 1104(a)(1). The second is the "duty of prudence," which requires "a plan's fiduciary to exercise [its] duties with the care, skill, and diligence" of a "prudent person acting under similar circumstances." Berlin, 858 F.2d at 1162; accord 29 U.S.C. § 1104(a)(1)(B). The third is the "duty of exclusive purpose," which requires that a fiduciary "act for the exclusive purpose of providing benefits to plan beneficiaries." Berlin, 858 F.2d at 1162 (quoting Donovan, 680 F.2d at 271).

Plaintiff claims that Defendants failed to act in his interest as fiduciaries by "misrepresent[ing] facts that led to [his] forced retirement." (ECF No. 21). Although Plaintiff's complaint does not specify which fiduciary duty Defendants violated, the Court construes his complaint to claim a breach of loyalty. (ECF No. 1).

16

1.  **Plaintiff Sufficiently Alleges IP's Fiduciary Status**

The threshold issue is whether Defendants are "fiduciaries" to which the duty of loyalty applies. Defendants argue that they breached no fiduciary duty because none of the conduct Plaintiff alleges was performed in a fiduciary capacity. (ECF No. 10).

ERISA defines "fiduciary" liberally. See In re Cardinal Health, Inc. ERISA Litigation, 424 F.Supp.2d 1002, 1017-18 (S.D. Ohio 2006). Under 29 U.S.C. § 1002(21)(A), a "fiduciary" can be anyone who (i) "exercises discretionary authority respecting management of [the] plan or disposition of assets;" (ii) "renders investment advice […] with respect to any property of such plan;" or (iii) "has any discretionary responsibility in the administration of such plan." The standard for defining a "fiduciary" under ERISA is intentionally liberal. See John Hancock Mutual Life Ins. Co. v. Harris Trust & Savings Bank, 510 U.S. 86, 96 (1993) ("To help fulfill ERISA's broadly protective purposes, Congress commodiously imposed fiduciary standards on persons whose actions affect the amount of benefits retirement plan participants will receive."); accord Brock v. Hendershott, 840 F.2d 339, 342 (6th Cir. 1988) ("[T]he term was intended to be interpreted broadly by Congress[.]").

Fiduciary status is a "fact-intensive inquiry," inappropriate for resolution at the motion-to-dismiss stage.

17

Wallace v. International Paper Company, 509 F.Supp.3d 1045, 1052
(W.D. Tenn. 2020); see also Cardinal Health, 424 F.Supp.2d at
1030 ("It is typically premature to determine a defendant's
fiduciary status at the motion to dismiss stage of the
proceedings[.]"); In re CMS Energy ERISA Litigation, 312
F.Supp.2d 898, 907-09 (E.D. Mich. 2004) (holding fiduciary status
could not be determined on a motion to dismiss); Rankin v. Rots,
278 F.Supp.2d 853, 879 (E.D. Mich. 2003) ("[T]he manner in which
each defendant […] operated is for now a black box. To expect a
plaintiff to be able to turn on the light and point to the
particular individuals who exercised decision making authority
is simply too much to require at this stage of the case.")
Fiduciary status is determined by examining the "functional terms
of control and authority over the plan." Mertens v. Hewitt
Assocs., 508 U.S. 248, 262 (1993).

Here, Plaintiff alleges that IP had control over the
administration of severance benefits, either through appointing
fiduciaries, supervising fiduciary actions, or directly
administering the plan as a fiduciary. (ECF Nos. 1, 21). IP also
had authority to deny Plaintiff's application. (ECF No. 1). Those
allegations are sufficient at this stage.

### 2. Plaintiff Sufficiently Alleges That IP Breached Its Fiduciary Duty of Loyalty

The second issue is whether Plaintiff sufficiently states a claim for a breach of loyalty based on allegations of misrepresentation. Defendants argue that, even assuming *arguendo* they are fiduciaries under ERISA, Plaintiff has "failed to allege what the [offending] fiduciary act was" and "what representation Plaintiff relied on to his detriment." (ECF No. 10).

To state a breach of duty of loyalty based on misrepresentation, Plaintiff must show: "(1) that the defendant was acting in a fiduciary capacity when it made the challenged representations; (2) these constituted material misrepresentations; and (3) that the plaintiff relied on [them] to [his] detriment." James v. Pirelli Armstrong Tire Corp., 305 F.3d 439, 449 (6th Cir. 2002) (citing Ballone v. Eastman Kodak Co., 109 F.3d 117, 122, 126 (2d Cir. 1997)). A misrepresentation is material if creates a "substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision about if and when to retire." James, 305 F.3d at 449 (quoting Fischer v. Phila. Elec. Co., 994 F.2d 130, 135 (3d Cir. 1993)).

Plaintiff alleges sufficient facts to satisfy all three elements. Considering the first element, the complaint alleges several instances from which a findfinder could reasonably infer

that IP made representations to Plaintiff in a fiduciary capacity. When Plaintiff inquired about a job opening for his position on Sylvamo's website, IP executive Bramblett told Plaintiff that he need not apply for that position. (ECF No. 1, ¶ 24). Bramblett also reassured Plaintiff that she was "working on a plan with HR." (ECF No. 1, ¶ 24, No. 10, Exhibit G). Both statements are affirmative representations made by someone in a fiduciary capacity, because IP exercised authority over benefits decisions and had a duty to act in the best interest of its employees as plan participants. (ECF No. 1). See Moore, 458 F.3d at 438 (holding that an employer is a "fiduciary" under ERISA if it controls the administration of the plan); see also 29 U.S.C. § 1002(21)(A) (defining "fiduciary").

The second element, materiality, is satisfied as well. A factfinder can reasonably infer that Bramblett's statements were material because they led Plaintiff to believe that his transfer to Sylvamo would be automatic and required no further action. Had Plaintiff known that inaction would constitute a rejection, he might have acted differently. This is akin to Wallace v. International Paper Company, where the court found that an employer's inaccurate pension statement to be a material misrepresentation, because it misled a reasonable employee about when to retire. 509 F.Supp.3d 1045, 1051 (W.D. Tenn. 2020). See

20

also Deschamps v. Bridgestone Americas, Inc. Salaried Employees
Retirement Plan, 169 F.Supp. 735, 744, 746 (M.D. Tenn. 2015)
(finding the employer's misstatement about retirement benefits
eligibility that induced the employee to turn down job offers
constituted a material misrepresentation). Materiality can also
be inferred from Plaintiff's surprise on learning his position
was eliminated in the August 26, 2021 conversation. (ECF No. 1,
¶¶ 27-28).

Plaintiff sufficiently alleges the third element,
detrimental reliance on IP's misrepresentations. Relying on
Bramblett's statements, Plaintiff did not apply for a formal
transfer to Sylvamo. (ECF No. 21). He did not know that inaction
would constitute a rejection of the offer, which led to his
ineligibility for ERISA severance benefits (ECF No. 21). Assuming
Plaintiff's allegations are true, his disqualification from
ERISA benefits constitutes a legal detriment. See Van Loo v.
Cajun Operating Company, 703 Fed.Appx. 388, 394 (6th Cir. 2017)
("[D]etrimental reliance […] may be proved by loss of opportunity
to improve one's position."). A factfinder could infer that a
reasonable employee in Plaintiff's position would have believed
that the transfer was automatic, given Bramblett's reassurance
that Plaintiff need not formally apply to Sylvamo. See Deschamps
v. Bridgestone Americas, Inc. Salaried Employees Retirement

21

Plan, 840 F.3d 267, 274 (6th Cir. 2016) (finding employee's
reliance reasonable when employer assured employee that
employer's statement about pension eligibility was accurate).
IP's alleged "misrepresentations regarding [Plaintiff's] intent
to retire or refusal to take a job [from Sylvamo]" adversely
affected his benefits application. (ECF No. 21). IP denied
Plaintiff's application based on his "voluntary retirement" and
"rejection of Sylvamo's job offer", facts Plaintiff disputes.
(ECF No. 10).

### E.   Whether Plaintiff States a Claim for Purposeful Interference of Rights Against IP Under § 510

Plaintiff alleges that Defendants unlawfully and
intentionally interfered with his ERISA rights by "arbitrarily
deny[ing] [his] severance benefits application" and upholding
that denial without adequate explanation. (ECF No. 1, ¶ 55, No.
21). Defendants argue that Plaintiff fails to allege facts
demonstrating any prohibited employer conduct or specific intent
to interfere with Plaintiff's rights. (ECF No. 23).

To state a claim under § 510, a plaintiff must show that:
"(1) there was a prohibited employer conduct (2) taken for the
purpose of interfering (3) with the attainment of any right to
which the employee may become entitled." Caldwell v. PNC
Financial Services Group, Inc., 835 F.Supp.2d 510, 524 (S.D.

Ohio 2011). A "prohibited employer conduct" must substantially affect the plaintiff's employment relationship. See West v. Butler, 621 F.2d 240, 245-26 (6th Cir. 1980). To show purpose, the plaintiff must demonstrate "that [the] employer had a specific intent to violate ERISA." Smith v. Ameritech, 129 F.3d 857, 865 (6th Cir. 1997). Plaintiff fails to allege facts supporting an inference that Defendants purposefully interfered with Plaintiff's rights. (ECF No. 1). Plaintiff also fails to identify any prohibited employer conduct. (ECF No. 1).

Plaintiff's § 510 claim is unsupported by facts. It is also improperly raised. The § 510 claim was not mentioned in the original complaint. (ECF No. 1). It was raised, for the first time, in Plaintiff's response to Defendants' motion to dismiss. (ECF No. 21). "It is well established in the Sixth Circuit that a non-moving party cannot raise a new legal theory for the first time in response to an opposing party's motion to dismiss." Barrow v. Westrock, Inc., No. 1:19-cv-01089, 2021 WL 122985, at *1 (S.D. Ohio Jan. 13, 2021) (citing Tucker v. Union of Needletrades, Indus., & Textile Employees, 407 F.3d 784, 788 (6th Cir. 2005)). "[A]llowing such conduct would severely prejudice the moving party" by denying it an "opportunity to properly respond[.]" Barrow, 2021 WL 122985, at * 1 (citing In

re Keithley Instruments, Inc., Derivative Litigation, 599 F.Supp.2d 908, 912-16 (N.D. Ohio 2009)).

"The proper procedure for Plaintiff to assert a new claim is to amend the complaint[.]" Kollmer v. Jackson Tennessee Hospital Company, LLC, 219 F.Supp.3d 738, 745 (W.D. Tenn. 2016) (quoting Gilmour v. Gates, McDonald, & Co., 382 F.3d 1312, 1315 (11th Cir. 2004)); see also Fed. R. Civ. P. 15(a). Because Plaintiff has failed to assert his § 510 claim properly, it is **DISMISSED**.

## V.    CONCLUSION

Defendants' Rule 12(b)(6) Motion is **DENIED** on Plaintiff's § 502(a)(1)(B) and § 502(a)(3) claims against IP and **GRANTED** on Plaintiff's § 510 claim against IP.

All of Plaintiff's ERISA claims against IP Savings Plan fail as a matter of law. Defendants' Rule 12(b)(6) Motion is **GRANTED** on all claims against IP Savings Plan. Plaintiff's claims against IP Savings Plan are **DISMISSED**.

Because Plaintiff has voluntarily dismissed his jury trial demand by stipulation, Defendants' Rule 39(a)(2) Motion is **DENIED AS MOOT**.

SO ORDERED this _18th_ day of February, 2025.


/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE